ISAAC LEVINE, Appellant, *v*. BERNHARD SUSSER, Respondent.

(Supreme Court, Appellate Term, First Department, November, 1920, Term — Filed June, 1921.)

Brokers (real estate)—valid contract for commissions — when broker not employed in a confidential capacity by two opposing interests.

> Where there is nothing in an agreement between a real estate broker and an intending purchaser, as pleaded or testified to, whereby the broker bound himself not to disclose to the seller the fact that he was to receive a commission from the other party, the contract is valid on its face.
>
> Defendant agreed to purchase certain real estate at the price asked, only through plaintiff as broker, and that if he did not so purchase or if plaintiff did not receive a commission from the seller, defendant would pay plaintiff such commission. The plaintiff having received no commission from the seller upon a sale made within the purview of the terms of the contract brought an action in which he testified that defendant said to him: "If you bring me some property I like, I will buy it quick through you and you get the commission. Even if I buy the property through other brokers and you don't get the commission from the owner, the other side, I will pay from my own pocket the commission." *Held,* that the contract could not properly be construed as subjecting plaintiff to employment in a confidential capacity by two opposing interests, and a judgment entered upon a dismissal of the complaint at the close of plaintiff's case will be reversed and a new trial granted.
>
> Mullan, J., dissents.

APPEAL by plaintiff from a judgment of the City Court of the city of New York in favor of plaintiff, entered upon a dismissal of the complaint at the close of plaintiff's evidence.

Jacob Manheim, for appellant.

Barnett E. Kopelman, for respondent.

39

BIJUR, J. The complaint alleges that plaintiff was a real estate broker and agent; that defendant requested that he find properties for the defendant to purchase and to secure the asking price and terms; that defendant agreed that he would purchase these properties only through plaintiff as broker, and if defendant did not purchase such properties through plaintiff, or if plaintiff did not receive the commission on the sale from the seller, defendant would pay the plaintiff such commission. It is then alleged that a sale took place within the purview of the terms of this contract; that plaintiff did not receive a commission from the seller and that defendant refused to pay the same to him.

Plaintiff's testimony as to the contract was that defendant said to him: "If you bring me some property I like, I will buy it quick through you and you get the commission. Even if I buy the property through other brokers and you don't get the commission from the owner, the other side, I will pay from my own pocket the commission."

The motion to dismiss, which was granted, was to the effect "that it appears from the plaintiff's own testimony that the plaintiff was serving two masters. That he was under an agreement with the Wally Contracting Company (the seller) to secure a purchaser, and that he undertook that employment without disclosing the agreement he had with the prospective buyer. * * * We have it from the testimony of the plaintiff himself that he was serving two masters at the same time; and he could not faithfully perform his duty to either one or the other; and such a contract as alleged here, without being disclosed to the other party, places him in the position of assuming incompatible duties, and constitutes a contract against public policy, and is absolutely void."

It is to be observed that there was nothing in the agreement as pleaded or as testified to whereby the plaintiff bound himself not to disclose to the seller the fact that he was to receive anything from the defendant. The contract was, therefore, on its face perfectly lawful. If we may indulge in any presumption it must be that the parties intended a lawful agreement, and if it be capable of two constructions, the one which indicates its validity must be adopted. As to the mode of executing the contract, plaintiff was not asked, either by his own counsel or the defendant's counsel, whether he had actually disclosed the agreement to the seller. The statement in the motion to dismiss, therefore, that he had not disclosed the agreement to the seller was a pure assumption on the part of defendant's counsel. I am cited by the respondent to no authority which places upon one party to a contract legal on its face the burden of excluding by proof the existence of all possible circumstances which might render the contract illegal in the mode of its execution.

If, however, we might hazard a guess that the plaintiff had not disclosed his agreement with the seller, we come to what may be regarded as the more substantial consideration, *i. e.*, that the contract is in any event valid because it called for the exercise of no discretion by the plaintiff on behalf or in the interest of the defendant. If plaintiff's version be accepted, defendant was desirous only of learning of opportunities to make good investments in the purchase of real estate and offered to plaintiff certain inducements in case he brought such investments to defendant's notice. Respondent's counsel seems to have sensed some such element in the contract because he was at pains to cross-examine plaintiff at great length in regard to the manner of conducting business as a

broker, questioning him frequently as to whether it was not his duty on behalf of the seller to get the highest price possible and on behalf of the buyer to secure the property at the lowest price to which in substance plaintiff replied in the affirmative. Whether, however, this evidence be regarded as relating to the business of a real estate broker generally or as stating what plaintiff thought his duties might be under the agreement in question, it could not affect the very plain terms of that agreement, interpreted and illustrated as they were by what actually occurred in the transaction out of which the instant claim arises. It is clear to my mind that the agreement did not contemplate that plaintiff should use his efforts to secure terms for the buyer, defendant, and in fact he did not do so, but insisted, as suggested by the seller, that defendant should himself see the latter and negotiate the transaction to a close himself.

The difficulty of representing in the same transaction two employers with conflicting interests and the unlawfulness of an agreement to do so in the absence of a full disclosure of the situation to both parties is well discussed in *Empire State Ins. Co.* v. *Am. Central Ins. Co.*, 138 N. Y. 446, 449. Even where the broker is employed to exercise his discretion as to both parties their knowledge of all the facts will cure the vice. *Knauss* v. *Krueger Brewing Co.*, 142 N. Y. 70, 77. That case, however, and many others, point out that the contract is perfectly sound as within public policy whether a disclosure be made or not if the so-called broker is not called upon to exercise his discretion in the transaction. It seems to me to be a plain corollary of that proposition that even though his relation to one party be such as to require him to exercise his discretion on behalf of that one, if as to the other he is a pure intermediary without the duties of a

fiduciary, the contract is valid. Indeed, an example of a valid contract of that very character is cited in *Dickinson* v. *Tysen*, 209 N. Y. 395, 400, except that the roles are changed from those in the instant case to the extent that it is to the seller rather than, as in this case, to the buyer that the broker is free from the obligation to exercise such discretion. Since, therefore, the contract in the instant case cannot properly be construed as subjecting the plaintiff to employment in a confidential capacity by two opposing interests, the judgment must be reversed and new trial granted with costs to appellant to abide the event.

MULLAN, J. (dissenting). The plaintiff had submitted to defendant various parcels, and defendant was not interested in any of them, and plaintiff finally discontinued his efforts to interest defendant. Later the parties met accidentally, and defendant asked plaintiff if plaintiff had any properties to submit. Assuming as we must, the truth of plaintiff's story, plaintiff said to defendant: '' I gave you so many good properties at reasonable prices, and you did not buy any of them, and I have been bothering with you for over two months; what is the use of bothering with you. * * * If I bring you some good property you can buy yourself through other brokers and I don't get commission,'' and defendant replied; '' If you bring me some good property I like I will buy it quick through you, and you get the commission. Even if I buy the property through other brokers and you do not get the commission from the owner,— from the other side,— I will pay you from my own pocket the commission.'' Plaintiff subsequently submitted the property involved in this action, the owner and proposed seller being either the Krausman Realty Company or the Dixie Security Company. While defend-

Appellate Term, First Department, June, 1921. [Vol. 115.

ant was considering, the property was sold by plaintiff's original employer to the Wally Contracting Company. Plaintiff had been employed by the original seller through a Mr. Posner, who knew that defendant was plaintiff's prospective customer. Plaintiff procured the authorization of the Wally Contracting Company to represent it to effect a sale, the Wally Company being represented by one Wacht. Plaintiff's dealings with Wacht show plainly that plaintiff was the seller's broker. Wacht gave plaintiff an asking price of $142,000, revealing to him, however, that the deal could be closed at $138,000. There is no evidence that plaintiff told Wacht he was an employee of the buyer, and, on the other hand, there is evidence that Wacht did not even know the name of the buyer, but knew merely that plaintiff had a possible buyer who was a possible buyer when Posner's company was plaintiff's employer. Plaintiff went to defendant and, in violation of the duty he owed the seller of endeavoring to procure the highest price possible, never mentioned to defendant the asking price of $142,000, but told defendant that the owner wanted $138,000, and then immediately, and without any solicitation on the part of defendant, he told defendant that it was his opinion that the property could be bought for even less than $138,000.

My learned brethren hold the view that no skill was required of plaintiff by either the owner or the defendant, and that no discretion was vested in him. I am of the opinion that it very plainly appears that his skill was relied upon, and that he was given a very large measure of discretion. He had procured from Wacht maximum and minimum prices that were $4,000 apart. His duty to the owner was to obtain the best price procurable between $138,000 and $142,000. Such skill as he possessed should have been employed in

inducing the buyer to accept the largest figure within the limits of the discretion given him. Plaintiff's judgment should have been employed in determining how high the buyer would go. He betrayed the trust reposed in him by Wacht by making not the slightest effort to obtain a higher price than the minimum figure that had been named to him. Thus, he deliberately refused to put to use such skill and judgment as he possessed in a situation calling for the exercise of both. The actual holdings in the *Empire State Ins. Co.* and *Knauss* cases, cited by Mr. Justice Bijur, are not in point, nor do the *dicta* in the opinions in those cases exclude the requirement of good faith. If a broker is employed, in a given case, as a mere introducer, of course his duties are limited to the introduction. Otherwise, a broker is bound, as is any other employee, to the utmost of good faith in the interest of his employer. Here, he was at least false to the seller. This, I think, is plainly the case referred to in the Knauss opinion, " where by possibility his (the broker's) duty and his interest might clash." In his anxiety to procure a commission, the plaintiff gave to the defendant the benefit of an offer at a sum considerably less than the defendant may have been willing to pay. I think the situation calls for the application of the rule that has been tersely stated as follows: " It is unlawful for him (the broker) to attempt to act in the capacity of broker for both sides to a negotiation without the knowledge and consent of each of them, and in the event of his so doing he is not entitled to be compensated by either. * * * if the knowledge and consent of but one is obtained and the other is kept in ignorance of the dual employment there can be no recovery, not even as against the one assenting." 4 R. C. L. 328, ¶ 64, and cases cited; *Leathers* v. *Canfield,* 45 L. R. A. 33, and note. It seems to me to be of no

Appellate Term, First Department, June, 1921. [Vol. 115.

materiality that the agreement sued upon here contains no express term that plaintiff should not reveal to the seller the dual capacity in which he was acting. The question is whether he in fact acted in that dual capacity with the full knowledge of both parties of all the facts. That he did not disclose to the seller his agreement with the defendant is beyond doubt.

I am of the opinion that it amply appeared, out of plaintiff's own mouth, (1) that skill and judgment were required of him, (2) that he failed to employ such skill and judgment, and (3) that he acted in bad faith toward the seller, one of his employers. I vote, accordingly, for affirmance.

Judgment reversed and new trial granted, with costs to appellant to abide event.